1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9 WILLIAM S. MEYERS, individually and on
behalf of the marital community comprising
10 WILLIAM S. MEYERS and BONNIE A.
MEYERS,

Plaintiffs,

vs.

PROPERTY & CASUALTY INSURANCE
COMPANY OF HARTFORD, a foreign
insurance company,

Defendant.

No.

**VERIFICATION RE: FILING OF
STATE COURT PROCEEDINGS**

**(King County Superior Court Cause No.
12-2-27153-4)**

Matthew S. Adams declares as follows:

1.    I am an attorney with the law firm of Forsberg & Umlauf, P.S., which represents

defendant Property & Casualty Insurance Company of Hartford.  I am over the age of 18 and

am competent to testify.

2.    Attached are true and correct copies of the following pleadings and records filed

in the state court action *Meyers v. Property & Casualty Ins. Co. of Hartford*, King County

Cause No. 12-2-27153-4 SEA:

VERIFICATION RE: FILING OF STATE COURT PROCEEDINGS – PAGE 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1      (a)     Case Information Coversheet.

2      (b)     Summons and Complaint.

3      (c)     Affidavit / Declaration of Service.

4      (d)     Notice of Appearance of Defendant.

5      3.     In accordance with 28 U.S.C.A. § 1446, I verify that these are true and correct

6 copies of all records and proceedings in the state court proceeding.

7

8     I declare under penalty of perjury under the laws of the state of Washington that the

9 foregoing is true and correct to the best of my knowledge, information and belief.

10     EXECUTED this _28th_ day of August, 2012.

11                 FORSBERG & UMLAUF, P.S.

12

13             By: _____

14                 John P. Hayes, WSBA #21009
                 Matthew S. Adams, WSBA #18820

15                  Attorneys for Property & Casualty Company
                 of Hartford

16

17

18

19

20

21

22

23

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

687712 / 450.0055

## CERTIFICATE OF SERVICE

The undersigned certifies under the penalty of perjury under the laws of the State of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served the foregoing **VERIFICATION RE: FILING OF STATE COURT PROCEEDINGS** on the following individuals in the manner indicated:

Robert A. Meyers
Wright A. Noel
Carson & Noel, PLLC
20 Sixth Ave. NE
Issaquah, WA 98027-3428
(X) Via ECF

**SIGNED** this ___5th___ day of September, 2012, at Seattle, Washington.

_____
Veronica M. Waters

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

687712 / 450.0055

**FILED**

12 AUG 14 PM 2:57

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-27153-4 SEA

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| MEYERS | NO. 12-2-27153-4 SEA |
| VS | |
| HARTFORD | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

CAUSE OF ACTION

**(COM) -**   CONTRACT/COMMERCIAL

AREA DESIGNATION

**SEATTLE -**  Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

FILED

12 AUG 14 PM 2:57

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-27153-4 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| MEYERS | NO. 12-2-27153-4    SEA |
| | Order Setting Civil Case Schedule (*ORSCS) |
| vs                             Plaintiff(s) | |
| HARTFORD | ASSIGNED JUDGE  Spector_____3 |
| | FILE DATE:                        08/14/2012 |
| | TRIAL DATE:                     **01/06/2014** |
| Defendant(s) | |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (Schedule)** on the Defendant(s) along with the **Summons and Complaint/Petition.** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion. The **Schedule** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____ | _____

       Print Name                              Sign Name

# I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**

All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**

A filing fee of **$230** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**

A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**

When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**

*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**

A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $220 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**

**All** parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Tue 08/14/2012 | ★ |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$220 arbitration fee must be paid** | Tue 01/22/2013 | ★ |
| **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration. [*See KCLCR 4.2(a) and Notices on Page 2*]. | Tue 01/22/2013 | ★ |
| **DEADLINE** for Hearing Motions to Change Case Assignment Area. [*See KCLCR 82(e)*] | Tue 02/05/2013 | |
| **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(b)*]. | Mon 08/05/2013 | |
| **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(b)*]. | Mon 09/16/2013 | |
| **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | Mon 09/30/2013 | ★ |
| **DEADLINE** for Setting Motion for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | Mon 09/30/2013 | ★ |
| **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | Mon 11/18/2013 | |
| **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | Mon 12/09/2013 | |
| **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [*See KCLCR 4(j)*]. | Mon 12/16/2013 | |
| **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(2)*] | Mon 12/16/2013 | ★ |
| **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | Mon 12/23/2013 | |
| Joint Statement of Evidence [*See KCLCR (4)(k)*]. | Mon 12/30/2013 | ★ |
| **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file Proposed Findings of Fact and Conclusions of Law with the Clerk) | Mon 12/30/2013 | ★ |
| Trial Date [*See KCLCR 40*]. | Mon 01/06/2014 | |

## III. ORDER

Pursuant to King County Local Civil Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Civil Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

**DATED:** 08/14/2012

*Richard F. McDermott*

**PRESIDING JUDGE**

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

**CASE SCHEDULE AND REQUIREMENTS**
Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

**A. Joint Confirmation regarding Trial Readiness Report:**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

The form is available at http://www.kingcounty.gov/courts/superiorcourt.aspx . If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:** Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Cour website http://www.kingcounty.gov/courts/superiorcourt.aspx to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Nondispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:** Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

## B. Original Documents/Working Copies/ Filing of Documents

**All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents.** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application. The filer must still serve any others who are entitled to service but who have not opted in. E-Service generates a record of service document that can be e-filed. Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. Do not file the original of the proposed order with the Clerk of the Court. Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department.** Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.**

**C.    Form**

Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

*Richard F. McDermott*

_____
                                                            **PRESIDING JUDGE**

FILED

12 AUG 14 PM 2:57

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-27153-4 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY AT SEATTLE

| | |
|---|---|
| WILLIAM S. MEYERS, individually and on behalf of the marital community comprising WILLIAM S. MEYERS and BONNIE A. MEYERS, | NO. |
| Plaintiff, | SUMMONS (20 DAYS) |
| v. | |
| PROPERTY & CASUALTY INSURANCE COMPANY OF HARTFORD, a foreign insurance company, | |
| Defendant. | |

TO THE DEFENDANT:

A lawsuit has been started against you in the above-entitled court by William S. Meyers, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding day of service, or a default judgment may be

SUMMONS - 1

**CARSON | NOEL**, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

1  entered against you without notice. A default judgment is one where plaintiff is entitled to what
2  he asks for because you have not responded. If you serve a notice of appearance on the
3  undersigned person, you are entitled to notice before a default judgment may be entered.

4       You may demand that the plaintiff file this lawsuit with the court. If you do, the demand
5  must be in writing and must be served upon the person signing this summons. Within 14 days
6  after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on
7  you of this summons and complaint will be void.

8       If you wish to seek the advice of an attorney in this matter, you should do so promptly
9  so that your written response, if any, may be served on time.

10      This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State
11 of Washington.

12      DATED THIS 4th day of _____August_____, 2012.

CARSON & NOEL, PLLC

By _____
Robert A. Meyers, WSBA No. 24846
Wright A. Noel, WSBA No. 25264
Attorneys for Plaintiff Meyers

SUMMONS - 2

FILED

12 AUG 14 PM 2:57

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-27153-4 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY AT SEATTLE

| | |
|---|---|
| WILLIAM S. MEYERS, individually and on behalf of the marital community comprising WILLIAM S. MEYERS and BONNIE A. MEYERS,<br><br>      Plaintiff,<br><br>v.<br><br>PROPERTY & CASUALTY INSURANCE COMPANY OF HARTFORD, a foreign insurance company,<br><br>      Defendant. | NO.<br><br>COMPLAINT FOR VIOLATION OF THE INSURANCE FAIR CONDUCT ACT, VIOLATION OF THE CONSUMER PROTECTION ACT, BAD FAITH, BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND NEGLIGENCE |

Plaintiff WILLIAM S. MEYERS, by and through his attorneys at CARSON & NOEL, PLLC, complains and alleges as follows:

## I. **PARTIES**

  1.1  At all relevant times, Plaintiff WILLIAM S. MEYERS ("MEYERS") has resided in Shoreline, King County, Washington, and has been married to Bonnie A. Meyers.

  1.2  At all relevant times, Defendant PROPERTY & CASUALTY INSURANCE COMPANY OF HARTFORD ("HARTFORD") has been a foreign insurance company

**COMPLAINT - 1**

**CARSON | NOEL,** PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

domiciled in Connecticut, has been licensed to do business in the State of Washington, and has engaged in and has transacted insurance business in King County, Washington.

## II. JURISDICTION AND VENUE

2.1    MEYERS' Complaint against HARTFORD arises from:

    a.  An insurance claim under an insurance policy that MEYERS paid for in Shoreline, King County, Washington and that HARTFORD issued and delivered to MEYERS in Shoreline, King County, Washington,

    b.  An insurance claim that MEYERS submitted to HARTFORD and has pursued with HARTFORD from Shoreline, King County, Washington,

    c.  An insurance claim that MEYERS submitted to HARTFORD and has pursued with HARTFORD relating to bodily injuries and property damages that MEYERS sustained in an auto accident that occurred on Interstate 90 in Bellevue, King County, Washington.

2.2    This Court has jurisdiction over the parties and subject matter.

2.3    Venue is proper and appropriate in King County Superior Court at Seattle, because without limitation MEYERS' causes of action against HARTFORD arose in King County, Washington, and at all relevant times, HARTFORD has transacted business in King County, Washington.

## III. FACTS

**A.    MEYERS' Insurance Policy**

3.1    HARTFORD issued Personal Auto Policy No. 55PHH342000 ("the policy") to MEYERS and Bonnie Meyers. The policy incepted on June 7, 2010 and expired effective June 7, 2011.

3.2    The policy includes Medical Payments coverage with limits of $10,000 per person. The Insuring Agreement of the policy's Medical Payments coverage provides that

COMPLAINT - 2

**CARSON | NOEL,** ᴘʟʟᴄ
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

HARTFORD will pay "reasonable expenses incurred for necessary medical services because of bodily injury . . . [c]aused by accident[,] and [s]ustained by an insured."

       3.3    The policy includes Personal Injury Protection ("PIP") coverage with limits of $10,000 for medical and hospital expenses. In part, the Insuring Agreement of the policy's PIP coverage provides that HARTFORD will pay all reasonable and necessary medical and hospital expenses to or for an insured who sustains bodily injury caused by an accident arising out of the ownership, maintenance, or use of a motor vehicle as a motor vehicle.

       3.4    Neither MEYERS nor Bonnie Meyers has waived underinsured motorists ("UIM") coverage under the policy, either in whole or in part.

       3.5    The policy includes UIM coverage with limits of $250,000 per person and $500,000 per occurrence for bodily injury.

       3.6    The policy includes UIM coverage for property damage.

       3.7    The Insuring Agreement of the policy's UIM coverage provides in part as follows:

> A. We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of:
>
> 1. **Bodily injury** sustained by an insured and caused by an accident; and
>
> 2. **Property damage** caused by an accident. . . .
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**.
>
> B. **"Insured"** as used in this Part C means:
>
> 1. You or any family member.

*    *    *

COMPLAINT - 3

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

C. **"Property damage"** as used in this Part C means injury to or destruction of the property of an insured.

3.8    RCW 48.22.030 defines "underinsured motor vehicle" to mean "a motor vehicle . . . with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover." The policy incorporates the statutory definition as a matter of law.

3.9    The policy's UIM coverage includes a $100 deductible for property damage resulting from an accident involving "other than a hit-and-run vehicle."

3.10    The Limit of Liability section of the policy's UIM coverage provides, "If a limit for Property Damage Liability is shown in the Declarations . . . this limit is our maximum limit of liability for all property damage resulting from any one accident." The policy's Declarations do not show a limit for property damage liability under the policy's UIM coverage.

3.11    Part F of the policy provides in part as follows:

**OUR RIGHT TO RECOVER PAYMENT**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.

\*       \*       \*

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment.

We shall be entitled to a recovery under paragraph A. or B. only after the person has been fully compensated for damages.

COMPLAINT - 4

Our rights do not apply under Paragraph A. with respect to Underinsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an **underinsured motor vehicle**; and
2. Fail to advance payment to the insured in an amount equal to the tentative settlement within a reasonable time after receipt of notification.

## B. CLOER's Insurance Policy

3.12    Nationwide Insurance Company of America ("Nationwide") issued Personal Auto Policy No. PPNM0019182427-6 to James C. Cloer ("CLOER") and Edith A. Cloer ("CLOER's policy"). CLOER's policy incepted on August 4, 2010 and expired effective February 4, 2011.

3.13    CLOER's policy includes Bodily Injury Liability coverage relating to a 1997 Ford F350 with limits of $25,000 per person.

3.14    CLOER's policy includes Property Damage Liability coverage relating to a 1997 Ford F350 with limits of $10,000 per occurrence.

3.15    CLOER's policy is the only insurance policy that covers or potentially covers CLOER for damages relating to the bodily injuries and property damages that MEYERS sustained in the subject auto accident.

## C. The Auto Accident

3.16    On October 24, 2010, MEYERS was driving westbound in lane one of Interstate 90 in Bellevue, King County, Washington in his 2002 Ford Ranger extended-cab truck. As MEYERS approached the interchange with Interstate 405, traffic had stopped. So, MEYERS braked and brought his truck to a stop or nearly to a complete stop.

3.17    At all relevant times, MEYERS operated his truck in a lawful, reasonable, and safe manner.

COMPLAINT - 5

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

3.18 On October 24, 2010, CLOER was traveling behind MEYERS in lane one of Interstate 90 in Bellevue, King County, Washington. CLOER was driving a 1997 Ford F350 truck, and his truck was towing a boat. As CLOER approached the interchange with Interstate 405, he did not stop for the traffic ahead of him, and he rear ended MEYERS' truck at a high rate of speed ("accident" or "subject accident").

3.19 The accident occurred during the period of the policy and during the period of CLOER's policy.

3.20 CLOER rear ended MEYERS' truck so severely that it caused a four-car chain collision, it then forced MEYERS' truck into the concrete bulkhead along the side of Interstate 90, and the boat that CLOER's truck was towing ejected forward off of its trailer and into CLOER's truck.

3.21 As a direct and proximate result of the initial impact from CLOER's truck, MEYERS' body was thrust backwards so violently that it broke the seatback of MEYERS' truck, and the back of MEYERS' head shattered the rear window of the truck's extended cab. In turn, this knocked MEYERS unconscious and caused lacerations, abrasions, and a hematoma on the back and top of MEYERS' head.

3.22 MEYERS was unconscious during the secondary impact with the vehicle in front of his truck. He regained consciousness as his truck was barreling toward its tertiary impact with the concrete bulkhead along the side of Interstate 90. As a result of the tertiary impact with the bulkhead, MEYERS was knocked unconscious again, this time for approximately four or five minutes. MEYERS awoke with lacerations and abrasions on his face, and shortly before an ambulance arrived at the scene. MEYERS also eventually developed contusions on his face.

3.23 As a direct and proximate result of the accident, MEYERS' truck was destroyed, MEYERS incurred costs relating to the loss of use of his truck, the truck's canopy was irreparably damaged, and MEYERS' various personal property items were irreparably

COMPLAINT - 6

damaged. MEYERS also subsequently incurred costs associated with such property damages, including towing and storage costs. (Collectively, "property damages.")

3.24 An officer of the Washington State Patrol arrived at the accident scene, conducted an investigation, and completed a Police Traffic Collision Report that memorialized the officer's findings and conclusions. The officer:

    a. Concluded that CLOER was driving 60 miles per hour at the time of impact,

    b. Concluded that CLOER had "exceed[ed] a reasonably safe speed,"

    c. Concluded that CLOER had followed MEYERS' truck too closely,

    d. Concluded that CLOER had been inattentive,

    e. Concluded that CLOER's acts and omissions caused the subject accident,

    f. Cited CLOER for "speed too fast,"

    g. Did not conclude that MEYERS or any other person [i] had driven improperly or unsafely, [ii] had caused or contributed to the accident, or [iii] was in any way at fault for the accident,

    h. Did not cite MEYERS or any other person or driver for any violation relating to the accident,

    i. Observed that MEYERS had sustained "evident injury,"

    j. Observed that the person who had driven the vehicle in front of MEYERS' truck had sustained neck and back injuries as a result of the accident, and

    k. Observed and concluded that each of the four vehicles involved in the accident had met the "damage threshold."

3.25 MEYERS was transported via ambulance to Overlake Hospital in Bellevue, Washington. There, Mr. Meyers underwent a CT scan, and was diagnosed with a traumatic brain injury. Also, one facial laceration required stitches and eventually left a scar on MEYERS' forehead.

COMPLAINT - 7

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

3.26  As a direct and proximate result of the accident, MEYERS also suffered upper-back and neck injuries with accompanying pain and discomfort. MEYERS' neck pain persisted continuously and nonstop for approximately five months after the accident, and MEYERS still experiences intermittent flare ups of neck pain. MEYERS' upper-back pain has persisted continuously and nonstop since the accident.

3.27  The bodily injuries and related pain and discomfort that MEYERS has suffered as a direct and proximate result of the accident are likely permanent.

3.28  As a direct and proximate result of the accident, MEYERS' accident-related bodily injuries, and MEYERS' accident-related pain and discomfort, MEYERS has incurred expenses for reasonable and necessary medical services and prescriptions ("medical expenses"), and MEYERS might incur medical expenses in the future.

3.29  As a direct and proximate result of the accident, MEYERS' accident-related bodily injuries, and MEYERS' accident-related pain and discomfort, MEYERS has experienced loss of enjoyment of life, including [a] persistent loss of sleep and related issues and difficulties, and [b] the limitation of his ability to engage in several activities that he had enjoyed before the accident.

3.30  As a direct and proximate result of the accident, MEYERS has sustained special damages and general damages relating to his bodily injuries that substantially exceed the per-person Bodily Injury Liability limits of CLOER's policy.

**D.  The Insurance Claim**

3.31  On October 26, 2010, i.e., two days after the accident, MEYERS notified HARTFORD about the accident and submitted an insurance claim.

**1.  Property Damage**

3.32  CLOER's insurer, Nationwide, has taken the position that CLOER's policy provides only $10,000 in Property Damage Liability insurance coverage for all property damages that CLOER caused to all other drivers in the accident.

COMPLAINT - 8

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

3.33    Nationwide paid $7800 of CLOER's $10,000 Property Damage Liability policy limit to drivers other than MEYERS who had sustained property damages in the accident.

3.34    The remaining $2200 in insurance proceeds available under CLOER's policy for Property Damage Liability relating to the accident was and is insufficient to compensate MEYERS fully for the property damages that MEYERS sustained in the accident.

3.35    After the accident, MEYERS initially incorrectly believed that the policy did not include coverage for the property damages that MEYERS had sustained in the accident. So, on October 26, 2010, MEYERS sent an e-mail to HARTFORD that asked HARTFORD whether it would object to MEYERS contacting CLOER about the damage to MEYERS' truck, because, "I don't have collision coverage so I need to handle that end myself."

3.36    In response to MEYERS' e-mail dated October 26, 2010, HARTFORD did not notify MEYERS that the policy's UIM coverage includes coverage for property damage.

3.37    On November 2, 2010, MEYERS sent an e-mail to HARTFORD that asked whether the policy's UIM coverage applies to the property damages that MEYERS had sustained in the accident. He wrote:

> I just got off the phone with The Hartford and they told me I have "under-insured" motorist coverage. How does that work on my claim? Does Hartford take care of my truck, then go after recovery from Nationwide or Mr. Cloer?

3.38    On November 2, 2010, in response to MEYERS' e-mail dated November 2, 2010, HARTFORD sent an e-mail to MEYERS that [a] denied that the policy's UIM coverage applies to property damage, [b] denied coverage under the policy's UIM coverage for the property damages that MEYERS had sustained in the accident, and [c] denied MEYERS the payment of benefits under the UIM coverage for the property damages that MEYERS' had sustained in the accident. HARTFORD wrote:

COMPLAINT - 9

> You do not have any uninsured or underinsured coverage for property damage, just for your injuries. Unfortunately, there is nothing we can do with your vehicle.

HARTFORD'S e-mail dated November 2, 2010 provides the only explanation that HARTFORD gave to MEYERS for denying coverage and denying payment of benefits for the property damages that MEYERS had sustained in the accident. HARTFORD did not and has not reserved its right to deny coverage or deny payment of benefits for the property damages that MEYERS sustained in the accident for any other legal basis.

3.39    As a direct and proximate result of HARTFORD's denial of coverage and denial of payment of benefits for the property damages that MEYERS had sustained in the accident, MEYERS was deprived of a payment under the policy for his property damages, and MEYERS lost the use of those insurance proceeds.

3.40    In response to HARTFORD's denial of coverage and denial of payment of benefits for the property damages that MEYERS had sustained in the accident, MEYERS researched the law of Washington State to find out whether HARTFORD's position was legal and tenable. On December 3, 2010, MEYERS notified HARTFORD that the policy's UIM coverage applies to property damage as a matter of Washington law unless MEYERS had waived such coverage in writing. MEYERS therefore asked HARTFORD to [a] demonstrate that MEYERS had waived in writing UIM coverage for property damage, or [b] reconsider its position and pay for the property damages that MEYERS had sustained in the accident under the policy's UIM coverage.

3.41    On December 6, 2010, MEYERS sent an e-mail to HARTFORD in which MEYERS [a] pasted and included a hyperlink to RCW 48.22.030, [b] advised HARTFORD that RCW 48.22.030 provides that the policy must include UIM coverage for property damage unless MEYERS had waived such coverage in writing, [c] advised HARTFORD that he did not recall ever waiving UIM coverage in writing, and [d] reminded HARTFORD that he had asked HARTFORD to send him a copy of a written UIM waiver if he had signed one.

**COMPLAINT - 10**

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

3.42    In response to MEYERS' research and analysis, HARTFORD notified MEYERS, without reserving any rights or defenses, that it would pay only for the property damages that MEYERS had sustained to his truck in the accident, less a $100 deductible: In a letter dated December 16, 2010, HARTFORD presented its itemized breakdown of the value of MEYERS' truck, and it enclosed a Market Valuation Report that purported to support the itemized breakdown. In pertinent part, in the text of its letter, HARTFORD calculated the ACV of MEYERS' truck to be $7850 and calculated the related sales tax to be $769.30. However, the Market Valuation Report that HARTFORD had enclosed with its letter revealed that the truck's ACV was actually $8407 and that the related sales tax was actually $823.89. HARTFORD's letter did not specifically explain the reason for the discrepancy between the values presented in HARTFORD's letter and the values presented in the enclosed Market Valuation Report.

3.43    In its letter dated December 16, 2010, HARTFORD:

      a.  Neither agreed to pay for [i] the damages that MEYERS had sustained in the accident to the truck's canopy or to MEYERS' personal property, or [ii] the various costs and expenses that MEYERS had incurred as a result of the property damages that MEYERS had sustained in the accident (collectively, "other property damages"),

      b.  Nor advised MEYERS that it had reconsidered and changed its earlier denial of UIM coverage that encompassed the other property damages.

Likewise, HARTFORD did not advise MEYERS of any such agreement or change of position in any separate communication.

3.44    On December 27, 2010, without reserving any rights or defenses, HARTFORD sent a check to MEYERS for $8294.80, reflecting a payment for only the alleged value of MEYERS' truck as itemized in HARTFORD's letter dated December 16, 2010 -- less the policy's $100 deductible and a salvage value to which MEYERS had agreed. Without

COMPLAINT - 11

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

explanation, HARTFORD continued to deny coverage and deny payment of benefits for [a] the full value of MEYERS' truck as presented in the Market Valuation Report that HARTFORD had enclosed with its letter dated December 16, 2010, and [b] MEYERS' other property damages.

3.45 As a direct and proximate result of HARTFORD's continuing denial of coverage and continuing denial of payment of benefits for the full amount of property damages that MEYERS had sustained in the accident, MEYERS was deprived of a payment for those property damages, and MEYERS continued to lose the use of those insurance proceeds.

3.46 As of January 5, 2011, MEYERS had not been fully compensated for the property damages and bodily injuries that he had sustained in the accident. Indeed, MEYERS has never been fully compensated for the property damages and bodily injuries that he sustained in the accident.

3.47 On January 5, 2011, i.e., just days after HARTFORD had made a payment toward the property damages to MEYERS' truck, HARTFORD sent a letter to MEYERS advising him that HARTFORD would subrogate against CLOER and Nationwide in an effort to recover $8394.80, reflecting the payment that HARTFORD had made to MEYERS toward the property damages to MEYERS' truck, plus MEYERS' $100 deductible. In that letter, HARTFORD also notified MEYERS that if HARTFORD's subrogation effort was successful, MEYERS would "receive a pro-rata share of [his] deductible." In its letter dated January 5, 2011, HARTFORD did not notify MEYERS that [a] the policy and Washington law preclude HARTFORD from recovering damages from a third party unless and until MEYERS "has been fully compensated for damages," and/or [b] WAC 284-30-393 provides that if an insurer successfully subrogates to recover a loss, "Any recoveries must be allocated first to the insured for any deductible(s) incurred in the loss. . . ."

3.48 On June 21, 2011, while unrepresented by counsel, MEYERS completed a draft of a settlement demand letter to CLOER and Nationwide. Because HARTFORD had not fully

**COMPLAINT - 12**

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

paid MEYERS for the property damages that MEYERS had sustained in the accident, the settlement demand letter included a demand for and an itemized breakdown of MEYERS' accident-related property damages. On June 21, 2011, MEYERS e-mailed the draft of his settlement demand letter to HARTFORD for HARTFORD'S review, comment, and approval.

3.49    On June 24, 2011, HARTFORD sent an e-mail to MEYERS acknowledging receipt of MEYERS' settlement demand letter to CLOER and Nationwide, and advising MEYERS that his settlement demand letter "appears to be in line and would be acceptable to send to the at-fault carrier, Nationwide Insurance in regards to your settlement request."

3.50    On June 28, 2011, MEYERS finalized his settlement demand letter to CLOER and Nationwide, and enclosed six pages of documents that served to verify and quantify the damages that MEYERS had detailed in the text of his letter. Approximately half of the analysis in the text of the settlement demand letter related to MEYERS' accident-related property damages, and five of the six pages of enclosures related to MEYERS' accident-related property damages. MEYERS then mailed the letter and enclosures to Nationwide, CLOER, and HARTFORD. MEYERS incurred costs relating to the mailing of those letters, including postage costs and copy costs.

3.51    As a direct and proximate result of HARTFORD's continuing denial of coverage and continuing denial of payment of benefits for the full amount of property damages that MEYERS had sustained in the accident, MEYERS [a] incurred costs in an effort to recover his property damages from CLOER and Nationwide, [b] was deprived of a payment for those property damages, and [c] continued to lose the use of those insurance proceeds.

3.52    On August 3, 2011, HARTFORD sent a letter to MEYERS in which it represented that it had the right to subrogate to recover payments that HARTFORD had made on MEYERS' behalf as a result of the accident. The letter asked MEYERS to choose from several options that best described the status of his claim, and then return the letter to HARTFORD. MEYERS checked the options [a] "I have not settled my claim with the other

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

insurance company" and [b] "I am pursuing a claim against the other party." MEYERS then returned the letter to HARTFORD on or about August 3, 2011. In its letter dated August 3, 2011, HARTFORD did not notify MEYERS that the policy and Washington law preclude HARTFORD from recovering damages from a third party unless and until MEYERS "has been fully compensated for damages."

3.53   HARTFORD subrogated to recover the payment that HARTFORD had made toward the property damages that MEYERS had sustained in the accident. As a result of that effort, HARTFORD recovered $2032 from Nationwide under the Property Damage Liability coverage of CLOER's policy. HARTFORD's recovery of those proceeds eroded and exhausted the $10,000 per-occurrence limit of CLOER's Property Damage Liability coverage.

3.54   As a direct and proximate result of HARTFORD's subrogation recovery, HARTFORD [a] denied and deprived MEYERS of the payment of benefits under CLOER's Property Damage Liability coverage, and [b] MEYERS lost the use of those proceeds.

3.55   On August 23, 2011, HARTFORD sent a letter to MEYERS that reads in part:

> We are pleased to inform you that we have resolved the above subrogation claim with the third party. While we have made every effort to collect the full amount of your UMPD deductible, the material facts of the matter and/or the insurance status of the third party were such that total recovery was not feasible. A check in the amount of $24, which represents a pro-rata share of your deductible, will be sent under separate cover.

In its letter dated August 23, 2011, HARTFORD did not notify MEYERS that [a] the policy and Washington law preclude HARTFORD from recovering damages from a third party unless and until MEYERS "has been fully compensated for damages, or [b] WAC 284-30-393 provides that if an insurer successfully subrogates to recover a loss, "Any recoveries must be allocated first to the insured for any deductible(s) incurred in the loss. . . ."

3.56   On or about August 23, 2011, HARTFORD sent MEYERS a check for $24.00. Attached to the check was an Explanation of Benefits that read in part, "We are pleased to

COMPLAINT - 14

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

enclose a check which represents a pro rata share of your deductible. The material facts of the matter and/or the insurance status of the third party were such that the total recovery was not feasible." In its Explanation of Benefit, HARTFORD did not notify MEYERS that WAC 284-30-393 provides that if an insurer successfully subrogates to recover a loss, "Any recoveries must be allocated first to the insured for any deductible(s) incurred in the loss. . . ."

3.57    HARTFORD denied and withheld from MEYERS the recovery of $76 of his deductible, and MEYERS lost the use of those proceeds.

3.58    As of February 13, 2012, HARTFORD [a] still had not agreed to pay MEYERS for the other property damages that MEYERS had sustained in the accident, [b] still had not advised MEYERS that it had reconsidered its earlier denial of UIM coverage vis-à-vis MEYERS other property damages, and [c] had thus continued to deny coverage and continued to deny payment of benefits for the full amount of property damages that MEYERS had sustained in the accident. As a direct and proximate result of HARTFORD's continuing denial of coverage and continuing denial of payment of benefits for the full amount of property damages that MEYERS had sustained in the accident, MEYERS remained deprived of a payment for those property damages, and MEYERS continued to lose the use of those insurance proceeds.

3.59    On February 13, 2012, MEYERS called HARTFORD, advised HARTFORD that his policy's definition of "property damage" encompassed MEYERS' other property damages, and asked HARTFORD to explain the basis of its refusal to pay for MEYERS' other property damages. HARTFORD was unable to provide an explanation at that time, and did not contact MEYERS between February 13, 2012 and February 21, 2012 to provide an explanation.

3.60    On February 21, 2012, MEYERS sent a fax to HARTFORD that [a] reiterated MEYERS' request for an explanation of HARTFORD's refusal to pay for the other property damages that MEYERS had sustained in the accident, and [b] attached an excerpt from the

COMPLAINT - 15

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

policy's UIM coverage that defines "property damage" to mean "injury to or destruction of the property of an insured." MEYERS incurred costs relating to the fax transmission.

3.61  On February 21, 2012, in response to the fax that MEYERS had sent on February 21, 2012, HARTFORD sent an e-mail to MEYERS advising that HARTFORD had issued a check to cover the $233.92 in storage charges that MEYERS had incurred as a result of his accident-related property damages and that MEYERS had documented in his settlement demand letter to CLOER and Nationwide. MEYERS later received the check for $233.92.

3.62  In its e-mail dated February 21, 2012, HARTFORD neither agreed to pay for the damages that MEYERS had sustained in the accident to the truck's canopy or to MEYERS' personal property, nor advised MEYERS that it had reconsidered its earlier denial of UIM coverage that had encompassed the damages to MEYERS' canopy and personal property. Instead, HARTFORD continued to deny coverage and continued to deny payment of benefits for those property damages, taking the position that [a] MEYERS' homeowners insurance should cover the damage to MEYERS' personal property, and [b] HARTFORD's earlier payment toward the damage to the truck encompassed the damage to the canopy.

3.63  On February 22, 2012, MEYERS sent an e-mail to HARTFORD [a] advising that the canopy was not part of the truck and that MEYERS had separately purchased and installed the canopy, [b] advising that he could not recover for the damage to his personal property under his homeowners' insurance policy, and [c] advising HARTFORD that he saw nothing in the policy that excludes coverage for the property damages that MEYERS had sustained in the accident to his personal property and the canopy.

3.64  On March 12, 2012, MEYERS sent an e-mail to HARTFORD that in part asked HARTFORD to "provide me with a reference to the specific contract provision that limits my UIM property damage coverage to the vehicle."

3.65  On March 22, 2012, MEYERS sent a fax to HARTFORD that in part reiterated MEYERS request to "provide me with a reference to the specific contract provision that limits

**COMPLAINT - 16**

my UIM property damage coverage to the vehicle." MEYERS incurred costs relating to the fax transmission.

3.66    On March 27, 2012, MEYERS sent a fax to HARTFORD that in part reiterated MEYERS' request to "provide me with a reference to the specific contract provision that limits my UIM property damage coverage to the vehicle." MEYERS incurred costs relating to the fax transmission.

3.67    HARTFORD did not respond to the requests in MEYERS' e-mail dated February 22, 2012, e-mail dated March 12, 2012, fax dated March 22, 2012, and/or fax dated March 27, 2012 within 10 working days, or at any time before May 11, 2012. During that time [a] HARTFORD continued to deny coverage and deny payment of benefits for the property damages that MEYERS had sustained in the subject accident to his personal property and the canopy, [b] MEYERS was deprived of a payment for those property damages, and [c] MEYERS continued to lose the use of those insurance proceeds.

3.68    On or about May 11, 2012, without reserving any rights or defenses, HARTFORD sent a check to MEYERS for $650, as payment toward the property damages that MEYERS had sustained in the subject accident to his personal property and the canopy.

3.69    The $650 check that HARTFORD issued to MEYERS on or about May 11, 2012 did not fully compensate MEYERS for the property damages that MEYERS had documented and claimed for the accident-related damages to MEYERS' personal property and the canopy. HARTFORD did not explain and has never explained why it has not paid MEYERS for the full value of the property damages that MEYERS had sustained in the accident to his personal property and the canopy. HARTFORD continues to deny coverage and deny payment of benefits for the full value of the property damages that MEYERS had documented and claimed for his personal property.

3.70    On June 12, 2012, HARTFORD notified MEYERS through his counsel that it was waiving its rights to recover payments under Part F of the policy. HARTFORD has never

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

tendered to MEYERS the $2032 in proceeds that HARTFORD had recovered from CLOER and Nationwide under the Property Damage Liability coverage of CLOER's policy.

3.71 HARTFORD continues to deny coverage and deny payment of benefits for the full amount of property damages that MEYERS sustained in the accident.

**2. Bodily Injury**

3.72 On October 26, 2010, i.e., two days after the subject accident, MEYERS executed and submitted to HARTFORD a release that authorized HARTFORD to obtain MEYERS' present and future personal health information relating to MEYERS' insurance claim and the subject accident. The release authorized HARTFORD to obtain MEYERS' personal health information during the duration of MEYERS' insurance claim, subject to a maximum duration of 24 months.

3.73 MEYERS diligently sought reasonable and necessary treatment for the bodily injuries and related pain that he had sustained in the accident.

3.74 On information and belief, HARTFORD has paid MEYERS' accident-related medical and treatment expenses without reserving any of its rights or defenses.

3.75 As HARTFORD has paid MEYERS' accident-related medical and treatment expenses, it has not provided accompanying statements setting forth the coverage(s) under which HARTFORD has made the payments.

3.76 HARTFORD has never notified MEYERS that [a] HARTFORD was denying coverage for any of MEYERS' accident-related medical or treatment expenses, [b] the policy's $10,000 limit for medical and hospital expenses under the PIP coverage has been exhausted, or [c] the policy's $10,000 limit for medical expenses under the Medical Payments coverage has been exhausted.

3.77 On June 21, 2011, while unrepresented by counsel, MEYERS completed a draft of a settlement demand letter to CLOER and Nationwide. In that letter, MEYERS demanded that CLOER and Nationwide pay all past and future special damages resulting from the

COMPLAINT - 18

accident, plus a patently understated $65,000 in general damages. The amounts that MEYERS demanded from CLOER and Nationwide in the letter exceeded the limits of CLOER's policy.

3.78   On June 21, 2011, MEYERS e-mailed the draft of his settlement demand letter to HARTFORD for HARTFORD's review, comment, and approval.

3.79   On June 24, 2011, HARTFORD sent an e-mail to MEYERS acknowledging MEYERS' settlement demand letter to CLOER and Nationwide, and advising MEYERS that his settlement demand letter "appears to be in line and would be acceptable to send to the at-fault carrier, Nationwide Insurance in regards to your settlement request."

3.80   By June 24, 2011, HARTFORD had [a] acknowledged and admitted that MEYERS is an insured under the policy, [b] acknowledged and admitted that CLOER was wholly "at fault" for the subject accident, [c] acknowledged and admitted that CLOER had owned and operated an underinsured motor vehicle at all pertinent times, [d] acknowledged and admitted that MEYERS had sustained bodily injury and property damages because of an accident arising out of the use of CLOER's underinsured motor vehicle, [e] paid MEYERS' medical expenses without reserving any rights or defenses, and had thus acknowledged and admitted that those expenses were reasonable and necessary to treat the bodily injuries that MEYERS had sustained in the subject accident, and [f] acknowledged and admitted, without reservation or caveat, that MEYERS' settlement demand to CLOER and Nationwide was "in line" and "acceptable." Despite this, HARTFORD has neither paid nor offered to pay MEYERS the damages that MEYERS demanded from CLOER in the settlement-demand letter to the extent that those damages exceeded the limits of CLOER's policy. As a direct and proximate result of HARTFORD's failure and refusal to pay those proceeds, MEYERS has sustained damages.

3.81   On June 28, 2011, MEYERS finalized his settlement demand letter to CLOER and Nationwide, and mailed it to Nationwide, CLOER, and HARTFORD.

COMPLAINT - 19

3.82    On July 29, 2011, HARTFORD sent MEYERS a letter that asked MEYERS to sign and return a release of medical information "so that we may obtain the medical records concerning your injury." On October 26, 2010, MEYERS had already signed a medical release and returned it to HARTFORD, and that release had already authorized HARTFORD to obtain MEYERS' medical records for up to two years. Nevertheless, MEYERS signed the release and returned it to HARTFORD on or about August 4, 2011.

3.83    On August 3, 2011, HARTFORD sent a letter to MEYERS in which it represented that it had the right to subrogate to recover payments that HARTFORD had made on MEYERS' behalf as a result of the accident. In the subject heading, the letter included only the claim number that HARTFORD had assigned to the bodily injury component of MEYERS' claim. In the letter, HARTFORD asked MEYERS to choose from several options that best described the status of his claim, and then return the letter to HARTFORD. MEYERS checked the options [a] "I have not settled my claim with the other insurance company" and [b] "I am pursuing a claim against the other party." MEYERS also jotted a note to HARTFORD that read, "There should be a copy of my [settlement demand] letter to Nationwide in your (Hartford's) file. If you don't have it, please call me and I'll send it to you." MEYERS then returned the letter to HARTFORD on or about August 3, 2011.

3.84    In its letter dated August 3, 2011, HARTFORD did not notify MEYERS that the policy and Washington law preclude HARTFORD from recovering damages from a third party such unless and until MEYERS "has been fully compensated for damages."

3.85    On August 23, 2011, HARTFORD sent a letter to MEYERS that reads in part:

> We are pleased to inform you that we have resolved the above subrogation claim with the third party.

In the subject heading, the letter included the claim number that HARTFORD had assigned to the bodily injury component of MEYERS' claim. In its letter dated August 23, 2011, HARTFORD did not notify MEYERS that the policy and Washington law preclude

COMPLAINT - 20

HARTFORD from recovering damages from a third party such as CLOER and Nationwide unless and until MEYERS "has been fully compensated for damages."

3.86  On October 3, 2011, HARTFORD sent a letter to MEYERS in which it represented that it had the right to subrogate to recover payments that HARTFORD had made on MEYERS' behalf as a result of the accident. In the subject heading, the letter included the claim number that HARTFORD had assigned to the bodily injury component of MEYERS' claim. In the letter, HARTFORD asked MEYERS to choose from several options that best described the status of his claim, and then return the letter to HARTFORD. MEYERS checked the options [a] "I have not settled my claim with the other insurance company" and [b] "I am pursuing a claim against the other party." MEYERS then returned the letter to HARTFORD on or about October 10, 2011.

3.87  In its letter dated October 3, 2011, HARTFORD did not notify MEYERS that the policy and Washington law preclude HARTFORD from recovering damages from a third party unless and until MEYERS "has been fully compensated for damages."

3.88  HARTFORD subrogated against CLOER and Nationwide to recover payments that HARTFORD had made toward MEYERS' medical expenses. Initially unbeknownst to MEYERS, as a result of its subrogation effort, HARTFORD reached an agreement in principle with CLOER and Nationwide to obtain $8500 under the Bodily Injury Liability Coverage of CLOER's policy in exchange for HARTFORD's agreement to reduce its alleged medical lien. HARTFORD's agreement in principle with CLOER and Nationwide necessarily eroded and reduced the $25,000 per-person limit of CLOER's Bodily Injury Liability coverage.

3.89  On February 10, 2012, Nationwide sent an e-mail to MEYERS advising that Nationwide had tendered the $25,000 limit of CLOER's Bodily Injury Liability coverage. Nationwide advised MEYERS that it had allocated $8500 of that limit to HARTFORD in exchange for HARTFORD's agreement to reduce its alleged medical lien, which left only $16,500 of that limit for MEYERS.

COMPLAINT - 21

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

3.90　MEYERS was gravely concerned that HARTFORD had again subrogated to recover for itself insurance proceeds that served to compensate MEYERS for his damages. Therefore, on February 10, 2012, MEYERS called HARTFORD and left a voicemail to express his concern. HARTFORD did not return MEYERS' call.

3.91　On February 13, 2012, MEYERS called HARTFORD again and left another voicemail. HARTFORD returned MEYERS' call later that day, but neither substantively addressed MEYERS' concern about HARTFORD's subrogation effort, nor agreed to cease its subrogation effort.

3.92　On February 17, 2012, HARTFORD sent a letter to MEYERS advising that MEYERS' claim remained open because HARTFORD was working to obtain MEYERS' medical records and billing records, and asking MEYERS to notify HARTFORD about his treatment progress.

3.93　On February 21, 2012, MEYERS sent a fax to HARTFORD. In the fax, in part, MEYERS advised HARTFORD that he continued to experience intermittent neck pain and constant upper-back pain, and that two doctors had told him that his upper-back pain might never cease. MEYERS also opined that HARTFORD had been handling his claim in bad faith, and attached a draft complaint to Washington State's Insurance Commissioner that in part addressed HARTFORD's subrogation effort. MEYERS incurred costs relating to the fax transmission.

3.94　On February 22, 2012, MEYERS sent an e-mail to HARTFORD in direct response to HARTFORD's letter dated February 17, 2012. In that e-mail, MEYERS [a] detailed his treatment history, [b] advised HARTFORD that his upper-back pain continued constantly and his neck pain continued intermittently, [c] advised HARTFORD that his treatment had not worked, [d] advised HARTFORD that his doctors had characterized his condition as chronic and had opined that his condition might be permanent, [e] advised

COMPLAINT - 22

HARTFORD that his last medical visit relating to the accident was in September 2011, and [d] advised HARTFORD that he had no plans for additional treatment relating to the accident.

3.95 On February 22, 2012, MEYERS sent a separate e-mail to HARTFORD that in part memorialized that HARTFORD had not addressed MEYERS' concerns about HARTFORD's settlement with Nationwide through which HARTFORD had in principle recovered proceeds under CLOER's Bodily Injury Liability coverage.

3.96 On March 12, 2012, MEYERS sent an e-mail to HARTFORD in which he specifically asked HARTFORD to [a] release Nationwide to pay MEYERS the full amount of CLOER's $25,000 per-person policy limit for Bodily Injury Liability, and [b] pay from MEYERS' UIM coverage the remaining $40,000 that MEYERS had claimed for general damages in his settlement demand letter dated June 28, 2011.

3.97 On March 22, 2012, MEYERS sent a fax to HARTFORD in which MEYERS reiterated his request for HARTFORD to [a] release Nationwide to pay MEYERS the full amount of CLOER's $25,000 per-person policy limit for Bodily Injury Liability, and [b] pay from MEYERS' UIM coverage the remaining $40,000 that MEYERS had claimed for general damages in his settlement demand letter dated June 28, 2011. MEYERS incurred costs relating to the fax transmission.

3.98 On March 27, 2012, MEYERS sent a fax to HARTFORD in which MEYERS reiterated his request for HARTFORD to [a] release Nationwide to pay MEYERS the full amount of CLOER's $25,000 per-person policy limit for Bodily Injury Liability, and [b] pay from MEYERS' UIM coverage the remaining $40,000 that MEYERS had claimed for general damages in his settlement demand letter dated June 28, 2011. MEYERS incurred costs relating to the fax transmission.

3.99 On April 17, 2012, MEYERS sent an e-mail to HARTFORD that resubmitted a copy of MEYERS' settlement demand dated June 28, 2012 and the enclosures thereto. In that

COMPLAINT - 23

e-mail, in part, MEYERS observed that HARTFORD had previously approved that letter, but that nothing had materially changed in the claim since the date of that letter.

3.100  HARTFORD neither addressed nor substantively responded to the requests in MEYERS' communications dated February 10, 2012, February 13, 2012, February 21, 2012, March 12, 2012, March 22, 2012, and/or March 27, 2012 within 10 working days, or at any time on or before June 12, 2012.

3.101  On June 5, 2012, feeling that he was at his wits' end, MEYERS sent an e-mail to HARTFORD advising that he felt compelled to retain counsel and that he expected to retain counsel within the following week. HARTFORD did not respond to MEYERS' e-mail.

3.102  From October 26, 2010 to present, HARTFORD has not sent MEYERS a written notice every 30 days explaining why HARTFORD needed additional time to complete its investigation.

3.103  HARTFORD has denied MEYERS coverage and payment of benefits under the policy's UIM coverage for the bodily injuries that MEYERS sustained in the accident.

**c.    Communications through Counsel**

3.104  On June 11, 2012, through his new counsel at Carson & Noel, MEYERS [a] admonished HARTFORD that its subrogation efforts violated the policy and Washington law, [b] asked HARTFORD to immediately produce any authorities that HARTFORD believed authorized its subrogation efforts, and [c] advised HARTFORD that if it did not immediately produce such authorities, MEYERS would pursue CLOER and Nationwide for the full amount of proceeds available under the Bodily Injury Liability limits of CLOER's policy.

3.105  On June 12, 2012, i.e., one day later, HARTFORD notified MEYERS though his counsel that HARTFORD was waiving its rights to recover payments under Part F of the policy, and that MEYERS was free to negotiate a settlement with CLOER and Nationwide for the full amount of proceeds available under CLOER's policy.

COMPLAINT - 24

**CARSON | NOEL**, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

3.106 Nationwide notified MEYERS though his counsel that Nationwide was in principle extending the full $25,000 per-person Bodily Injury Liability limit of CLOER's policy to MEYERS, subject to confirmation that Medicare did not have a lien on MEYERS' claim. Nationwide demanded that MEYERS confirm with HARTFORD that HARTFORD has not denied coverage or refused payment for any of MEYERS' medical expenses, such that Medicare would pay those expenses and obtain a lien on the claim.

3.107 On June 21, 2012, through his counsel, MEYERS sent a letter to HARTFORD that asked HARTFORD to confirm in writing [a] that MEYERS had not exhausted the limits of insurance available under the policy for MEYERS' accident-related medical expenses, [b] that HARTFORD had not declined to pay any of MEYERS' accident-related medical expenses, and [c] the amount of insurance that remains available under MEYERS' policy to pay MEYERS' accident-related medical expenses.

3.108 HARTFORD did not respond to MEYERS' letter dated June 21, 2012 within 10 working days or at any later time.

3.109 On July 9, 2012, through his counsel, MEYERS sent a letter to HARTFORD that [a] memorialized that HARTFORD had failed to respond to MEYERS' letter dated June 21, 2012 within 10 working days, [b] admonished HARTFORD that its omission had violated the Washington Administrative Code, violated Washington State's Insurance Fair Conduct Act, was impeding and delaying MEYERS' settlement with CLOER, and was costing MEYERS money, and [c] reiterated the request for information that MEYERS had presented through counsel in his letter dated June 21, 2012.

3.110 HARTFORD did not respond to MEYERS' letter dated July 9, 2012 within 10 working days or at any later time.

3.111 Because HARTFORD failed or refused to provide the information that MEYERS had requested through counsel in his letters dated June 21, 2012 and July 9, 2012,

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

MEYERS incurred costs to obtain his billing records directly from MEYERS' treatment providers.

3.112 On July 10, 2012, through his counsel, MEYERS sent a settlement demand letter to HARTFORD that [a] presented a detailed analysis of MEYERS' claim for property damages and bodily injuries under the policy's UIM coverage, [b] presented a detailed analysis of HARTFORD's extra-contractual exposure, [c] demanded that HARTFORD pay MEYERS the $250,000 per-person bodily injury limit under the policy's UIM coverage, and [d] demanded that HARTFORD pay MEYERS for the full value of his property damages under the policy's UIM coverage.

3.113 On July 18, 2012, HARTFORD telephoned MEYERS through counsel and offered only $5000 in "new money" to settle the claim. HARTFORD simply summarily communicated the offer, and was unable to explain the legal basis for the offer based on the relevant policy language, the relevant facts, and/or the relevant law of Washington State.

3.114 On July 19, 2012, through his counsel, MEYERS sent a letter to HARTFORD that [a] memorialized the substance of HARTFORD's $5000 settlement offer, [b] memorialized that HARTFORD had not explained the basis of its offer in the insurance policy in relation to the facts or applicable law, and [c] admonished HARTFORD that its offer violated Washington Administrative Code ("WAC") section 284-30-330(13).

3.115 HARTFORD did not respond to MEYERS' letter dated July 19, 2012 within 10 working days or at any later time.

**e. Damages**

3.116 As a direct and proximate result of HARTFORD's acts and omissions during the handling of MEYERS' insurance claim, MEYERS has sustained damages, including [a] the loss and deprivation of insurance proceeds owing under the policy because of the bodily injuries and property damages that MEYERS sustained in the accident, [b] the loss of use of insurance proceeds owing under the policy because of the bodily injuries and property damages

COMPLAINT - 26

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

that MEYERS sustained in the accident, [c] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds owing under the policy, [d] the loss and deprivation of insurance proceeds under CLOER's policy, which serve to compensate MEYERS for the bodily injuries and property damages that MEYERS sustained in the accident, [e] the loss of use of insurance proceeds under CLOER's policy, which serve to compensate MEYERS for the bodily injuries and property damages that MEYERS sustained in the accident, [f] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain the insurance proceeds under CLOER's policy, and [g] other attorneys' fees, fees, costs, and expenses.

**E.     IFCA Notice**

3.117  On July 10, 2012, through his counsel, MEYERS sent a written Notice of Claim under Washington State's Insurance Fair Conduct Act to Washington State's Office of the Insurance Commissioner. MEYERS sent the notice to the Office of the Insurance Commissioner via certified mail with return receipt requested, and MEYERS incurred costs relating to the notice.

3.118  On July 10, 2012, through his counsel, MEYERS sent a written Notice of Claim under Washington State's Insurance Fair Conduct Act to HARTFORD. MEYERS sent the notice via certified mail with return receipt requested, and MEYERS incurred costs relating to the notice. On July 10, 2012, through his counsel, MEYERS also sent the notice to HARTFORD via e-mail and fax.

3.119  More than 20 days have passed since MEYERS sent his written Notice of Claim under Washington's Insurance Fair Conduct Act to Washington State's Office of the Insurance Commissioner and to HARTFORD. HARTFORD did not resolve the basis of MEYERS' action within 20 days of receiving MEYERS' written Notice of Claim.

3.120  MEYERS has satisfied all conditions and prerequisites necessary to assert a cause of action against HARTFORD under Washington State's Insurance Fair Conduct Act.

/ / /

COMPLAINT - 27

**F. Compliance with Policy's Terms and Conditions**

3.121   MEYERS has fully complied with all terms of the policy.

**G. Claim against CLOER**

3.122   MEYERS settled his claim against CLOER for $25,000.

3.123   CLOER and Nationwide have represented and warranted that $25,000 is the full amount of insurance proceeds that are available to cover CLOER for damages relating to the bodily injuries and property damages that MEYERS sustained in the subject auto accident.

## IV. CLOER'S / HARTFORD'S LIABILITY FOR MEYERS' ACCIDENT-RELATED DAMAGES

4.1   MEYERS incorporates by reference the allegations presented in paragraphs 1.1 through 3.123 of his Complaint as though set forth fully herein.

4.2   At all relevant times, CLOER owed a duty to MEYERS to exercise reasonable care when CLOER operated his truck.

4.3   CLOER breached the duty he owed to MEYERS to exercise reasonable care, and CLOER was negligent in several respects, including without limitation the following:

   a.   CLOER exceeded a reasonably safe speed. *See, e.g.*, RCW 46.61.445.

   b.   CLOER followed MEYERS' truck too closely. *See, e.g.*, RCW 46.61.145.

   c.   CLOER was inattentive.

   d.   CLOER operated his truck in a manner that endangered or was likely to endanger any person or property. *See, e.g.*, RCW 46.61.525.

4.4   As a direct and proximate result of CLOER's negligence, MEYERS has sustained damages, including without limitation: [a] bodily and physical injuries, [b] physical disfigurement, [c] general damages, [d] past, continuing, and future pain and suffering, [e] past, continuing, and future disability, [f] past, continuing, and future loss of enjoyment of life, [g] past, continuing, and future medical expenses, medication expenses, and treatment expenses, [h] property damages, including damage to MEYERS' truck, canopy, and personal property,

COMPLAINT - 28

loss of use, and property-damage-related costs and expenses, and [i] other fees, costs, and expenses.

4.5   CLOER was and is 100% at fault for the accident and MEYERS' damages. Neither MEYERS nor any non-party is in any way at fault for the accident or MEYERS' damages.

4.6   MEYERS' accident-related damages exceed the applicable limits of CLOER's policy, such that [a] CLOER owned and operated an underinsured motor vehicle at all relevant times, and [b] CLOER's liability for MEYERS' damages arose out of the ownership, maintenance, or use of an underinsured motor vehicle.

4.7   Under the policy's UIM coverage, and as provided by the law of Washington State, HARTFORD "steps into the shoes" of CLOER, and HARTFORD is responsible to pay for the past, present, and future compensatory damages that MEYERS has sustained and will sustain as a direct and proximate result of the accident and CLOER's negligence and/or fault.

## V. <u>FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT</u>

5.1   MEYERS incorporates by reference the allegations presented in paragraphs 1.1 through 4.7 of his Complaint as though set forth fully herein.

5.2   MEYERS is entitled to a judgment declaring and ordering that HARTFORD must pay MEYERS under the policy's UIM coverage for all past, present, and future compensatory damages, special damages, and general damages that MEYERS has sustained, continues to sustain, and will sustain in the future because of bodily injuries and property damages that MEYERS sustained in the accident.

5.3   MEYERS is entitled to a judgment declaring and ordering that HARTFORD must pay MEYERS benefits under the policy's Personal Injury Protection coverage for reasonable and necessary medical and hospital expenses that MEYERS incurs because of bodily injuries that MEYERS sustained in the accident.

COMPLAINT - 29

5.4     MEYERS is entitled to a judgment declaring and ordering that HARTFORD must pay MEYERS benefits under the policy's Medical Payments coverage for reasonable and necessary medical expenses that MEYERS incurs because of bodily injuries that MEYERS sustained in the accident.

## VI. SECOND CAUSE OF ACTION: BREACH OF CONTRACT

6.1     MEYERS incorporates by reference the allegations presented in paragraphs 1.1 through 5.4 of his Complaint as though set forth fully herein.

6.2     HARTFORD has breached obligations that it owes to MEYERS under the policy. HARTFORD's breaches include without limitation the following:

    a.  HARTFORD has breached its duty to pay MEYERS under the policy's UIM coverage for all compensatory damages that MEYERS has sustained because of bodily injuries and property damages that MEYERS sustained in the accident.

    b.  HARTFORD breached its duty to refrain from seeking and recovering payments from third parties such as CLOER and Nationwide until MEYERS had been fully compensated for damages.

6.3     As a direct and proximate result of HARTFORD's breaches of contract, MEYERS has sustained damages, including without limitation: [a] the loss and deprivation of insurance proceeds owing under the policy, [b] the loss of use of insurance proceeds owing under the policy, [c] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds under the policy, [d] the loss and deprivation of insurance proceeds under CLOER's policy, [e] the loss of use of insurance proceeds under CLOER's policy, [f] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain the insurance proceeds under CLOER's policy, and [g] other attorneys' fees, fees, costs, and expenses.

6.4     MEYERS is entitled to an award of reasonable attorneys' fees and costs.

COMPLAINT - 30

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

## VII. THIRD CAUSE OF ACTION: BAD FAITH

7.1   MEYERS incorporates by reference the allegations presented in paragraphs 1.1 through 6.4 of his Complaint as though set forth fully herein.

7.2   At all relevant times, HARTFORD owed a duty of good faith to MEYERS. HARTFORD's duty of good faith encompassed without limitation a duty to abstain from deception, a duty to practice honesty in all insurance matters, a duty to practice equity in all insurance matters, a duty to deal fairly, and a duty to give equal consideration to MEYERS' interests.

7.3   HARTFORD has breached its duty of good faith in several respects, including without limitation the following:

    a. HARTFORD has engaged in unfair or deceptive acts or practices in violation of RCW 48.30.010 and WAC 284-30-330.

    b. HARTFORD unreasonably denied MEYERS' claim for coverage and/or denied MEYERS the payment of benefits in violation of RCW 48.30.015.

    c. HARTFORD failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denying MEYERS' claim, denying MEYERS the payment of benefits, and/or for offering MEYERS a compromise settlement in violation of WAC 284-30-330(13) and WAC 284-30-380.

    d. HARTFORD refused to pay MEYERS' claim without conducting a reasonable investigation in violation of WAC 284-30-330(4).

    e. HARTFORD failed to provide an accurate evaluation of the actual cash value of MEYERS' truck in violation of WAC 284-30-380(7).

    f. HARTFORD misrepresented pertinent facts or policy provisions in violation of WAC 284-30-330(1).

COMPLAINT - 31

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

g. HARTFORD failed to fully disclose to MEYERS all pertinent benefits, coverages, or other provisions of the policy under which MEYERS' claim was presented in violation of WAC 284-30-350.

h. HARTFORD failed to acknowledge and act reasonably promptly upon MEYERS' communications in violation of WAC 284-30-330(2) and WAC 284-30-360.

i. HARTFORD failed to attempt in good faith to effectuate prompt, fair and equitable settlement of MEYERS' claim in violation of WAC 284-30-330(6).

j. HARTFORD failed to arrange with Nationwide to make appropriate payment to MEYERS and leave to themselves the burden of apportioning insurance liability in violation of WAC 284-30-330(6).

k. HARTFORD made payments not accompanied by statements setting forth the coverages under which the payments were made in violation of WAC 284-30-330(9).

l. HARTFORD delayed the investigation or payment of MEYERS' claim by requiring MEYERS and/or his physician to submit duplicative information in violation of WAC 284-30-330(11).

m. HARTFORD failed to notify MEYERS every thirty days explaining why his claim remained unresolved in violation of WAC 284-30-380.

n. HARTFORD subrogated to recover from CLOER and Nationwide before MEYERS had been fully compensated for his damages in violation of the policy and Washington law.

o. HARTFORD failed to fully reimburse MEYERS for his deductible in violation of WAC 284-30-393.

COMPLAINT - 32

p. HARTFORD has failed to pay MEYERS the proceeds that HARTFORD had recovered from CLOER under the Property Damage Liability coverage of CLOER's policy after HARTFORD waived its rights to recover payments under Part F of the policy.

q. HARTFORD has compelled MEYERS to initiate litigation to recover amounts due under the policy in violation of WAC 284-30-330(7).

r. HARTFORD has failed to practice equity and fairness in its dealings with MEYERS.

s. HARTFORD has failed to give equal consideration to MEYERS' interests.

7.4    HARTFORD's bad faith acts and omissions were unreasonable, frivolous, and/or unfounded.

7.5    As a direct and proximate result of HARTFORD's bad faith, MEYERS has sustained harm and damages, including without limitation [a] the loss and deprivation of insurance proceeds owing under the policy, [b] the loss of use of insurance proceeds owing under the policy, [c] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds under the policy, [d] the loss and deprivation of insurance proceeds under CLOER's policy, [e] the loss of use of insurance proceeds under CLOER's policy, [f] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain the insurance proceeds under CLOER's policy, and [g] other attorneys' fees, fees, costs, and expenses.

7.6    As a direct and proximate result of HARTFORD's bad faith, HARTFORD has waived and is estopped from asserting any purported right to [a] deny coverage, deny payment of benefits, and/or assert any coverage defenses; and/or [b] modify or supplement positions and defenses that HARTFORD had previously asserted, including without limitation [i] HARTFORD's basis for denying coverage for MEYERS' property damages, [ii] HARTFORD's admission that CLOER is solely at fault for the accident and MEYERS' accident-related bodily injuries and property damages, [iii] HARTFORD's admission that at all

COMPLAINT - 33

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

relevant times CLOER was the owner and operator of an underinsured motor vehicle, and that CLOER's liability for MEYERS' damages arose out of the ownership, maintenance, or use of an underinsured motor vehicle, [iv] HARTFORD's admission that MEYERS' treatment for his accident-related bodily injuries has been reasonable and necessary, [v] HARTFORD's admission that MEYERS' accident-related medical expenses have been reasonable and necessary, and [vi] HARTFORD's admission and concession that the damages that MEYERS identified and demanded in his settlement-demand letter dated June 28, 2011 were "in line" and "acceptable."

      7.7    MEYERS is entitled to an award of reasonable attorneys' fees and costs.

## VIII. FOURTH CAUSE OF ACTION: NEGLIGENCE

      8.1    MEYERS incorporates by reference the allegations presented in paragraphs 1.1 through 7.7 of his Complaint as though set forth fully herein.

      8.2    At all relevant times, HARTFORD has owed MEYERS a duty to exercise reasonable care with respect to the handling of MEYERS' insurance claim.

      8.3    HARTFORD has breached the duty it owes to MEYERS to exercise reasonable care with respect to the handling of MEYERS' insurance claim, and has thus been negligent.

      8.4    As a direct and proximate result of HARTFORD's negligence, MEYERS has sustained harm and damages, including without limitation [a] the loss and deprivation of insurance proceeds owing under the policy, [b] the loss of use of insurance proceeds owing under the policy, [c] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds under the policy, [d] the loss and deprivation of insurance proceeds under CLOER's policy, [e] the loss of use of insurance proceeds under CLOER's policy, [f] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain the insurance proceeds under CLOER's policy, and [g] other attorneys' fees, fees, costs, and expenses.

///
///

COMPLAINT - 34

## IX. FIFTH CAUSE OF ACTION
### VIOLATION OF INSURANCE FAIR CONDUCT ACT

9.1     MEYERS incorporates by reference the allegations presented in paragraphs 1.1 through 8.4 of his Complaint as though set forth fully herein.

9.2     MEYERS is a "first party claimant" as defined in Washington State's Insurance Fair Conduct Act, codified at RCW 48.30.015(4).

9.3     HARTFORD unreasonably denied MEYERS' claim for coverage in violation of Washington State's Insurance Fair Conduct Act, codified at RCW 48.30.015.

9.4     As a direct and proximate result of HARTFORD's unreasonable denial of MEYERS' claim for coverage, MEYERS has sustained actual damages, including without limitation [a] the loss and deprivation of insurance proceeds owing under the policy, [b] the loss of use of insurance proceeds owing under the policy, [c] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds under the policy, [d] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain insurance proceeds under CLOER's policy, [e] attorneys' fees, other fees, costs, and expenses incurred in this action, and [f] other attorneys' fees, fees, costs, and expenses.

9.5     HARTFORD unreasonably denied MEYERS the payment of benefits in violation of Washington State's Insurance Fair Conduct Act, codified at RCW 48.30.015.

9.6     As a direct and proximate result of HARTFORD's unreasonable denial of payment of benefits, MEYERS has sustained actual damages, including without limitation [a] the loss and deprivation of insurance proceeds owing under the policy, [b] the loss of use of insurance proceeds owing under the policy, [c] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds under the policy, [d] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain insurance proceeds under CLOER's policy, [e] attorneys' fees, other fees, costs, and expenses incurred in this action, and [f] other attorneys' fees, fees, costs, and expenses.

COMPLAINT - 35

**CARSON | NOEL,** PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

1    9.7    HARTFORD has breached the rules identified in RCW 48.30.015(5), including
2   without limitation the following:
3           a.  HARTFORD has violated WAC 284-30-330, including without limitation
4               subsections (1), (2), (4), (6), (7), (9), (11), and (13) thereof.
5           b.  HARTFORD has violated WAC 284-30-350.
6           c.  HARTFORD has violated WAC 284-30-360.
7           d.  HARTFORD has violated WAC 284-30-380.
8           e.  HARTFORD has violated other unfair claims settlement practice rules
9               adopted under RCW 48.30.010 and codified in WAC chapter 284-30,
10              including without limitation WAC 284-30-393.
11   9.8    MEYERS is entitled to an award of reasonable attorneys' fees and actual and
13   statutory litigation costs.
14   9.9    MEYERS is entitled to an award of treble damages.

## X. SIXTH CAUSE OF ACTION
## VIOLATION OF CONSUMER PROTECTION ACT

10.1    MEYERS incorporates by reference the allegations presented in paragraphs 1.1
through 9.9 of his Complaint as though set forth fully herein.

10.2    HARTFORD has engaged in unfair or deceptive acts or practices in violation of
RCW 48.30.010 and chapter 284-30 of the Washington Administrative Code. HARTFORD's
violations include without limitation the following:

        a.  HARTFORD has unreasonably denied a claim for coverage in violation of
            RCW 48.30.010(7).
        b.  HARTFORD has unreasonably denied MEYERS the payment of benefits in
            violation of RCW 48.30.010(7).
        c.  HARTFORD has violated WAC 284-30-330, including without limitation
            subsections (1), (2), (4), (6), (7), (9), (11), and (13) thereof.

COMPLAINT - 36

1      d.   HARTFORD has violated WAC 284-30-350.

2      e.   HARTFORD has violated WAC 284-30-360.

3      f.   HARTFORD has violated WAC 284-30-380.

4      g.   HARTFORD has violated WAC 284-30-393.

      10.3   HARTFORD's violations of RCW 48.30.010 and chapter 284-30 of the Washington Administrative Code constitute *per se* violations of Washington State's Consumer Protection Act, codified at RCW 19.86.

      10.4   As a direct and proximate result of HARTFORD's violations of Washington State's Consumer Protection Act, MEYERS has sustained harm and damages, including without limitation [a] the loss and deprivation of insurance proceeds owing under the policy, [b] the loss of use of insurance proceeds owing under the policy, [c] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds owing under the policy, [d] attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain insurance proceeds under CLOER's policy, and [e] other attorneys' fees, fees, costs, and expenses.

      10.5   MEYERS is entitled to an award of reasonable attorneys' fees and costs.

      10.6   MEYERS is an entitled to an award of treble damages.

      10.7   MEYERS is entitled to an order that enjoins further violations.

## PRAYER FOR RELIEF

WHEREFORE MEYERS prays for judgment and relief as follows:

      1.   For judgment against HARTFORD declaring and ordering that HARTFORD must pay MEYERS under the policy's UIM coverage for all past, present, and future compensatory damages, special damages, and general damages that MEYERS has sustained and will sustain because of bodily injuries and property damages that MEYERS sustained in the accident, including without limitation medical expenses, treatment expenses, medication expenses, property damages, loss of use damages, property-damage-related costs and expenses,

**COMPLAINT - 37**

**CARSON | NOEL,** ᴘʟʟᴄ
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

1  other fees, costs, and expenses, and general damages relating to MEYERS' physical
2  disfigurement, pain and suffering, disability, and loss of enjoyment of life.

3      2.      For judgment against HARTFORD declaring and ordering that HARTFORD
4  must pay MEYERS benefits under the policy's Personal Injury Protection coverage for
5  reasonable and necessary medical and hospital expenses that MEYERS incurs because of
6  bodily injuries that MEYERS sustained in the accident.

7      3.      For judgment against HARTFORD declaring and ordering that HARTFORD
8  must pay MEYERS benefits under the policy's Medical Payments coverage for reasonable and
9  necessary medical expenses that MEYERS incurs because of bodily injuries that MEYERS
10  sustained in the accident.

11      4.      For judgment against HARTFORD for all past, present, and future damages that
12  MEYERS has sustained and will sustain as a direct and proximate result of HARTFORD's
13  breaches of contract, including without limitation insurance proceeds owing under the policy;
14  the loss of use of insurance proceeds owing under the policy; attorneys' fees, other fees, costs,
15  and expenses incurred in an effort to obtain proceeds under the policy; the loss and deprivation
16  of insurance proceeds under CLOER's policy; the loss of use of insurance proceeds under
17  CLOER's policy; attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain
18  the insurance proceeds under CLOER's policy; and other attorneys' fees, fees, costs, and
19  expenses.

20      5.      For judgment against HARTFORD for all past, present, and future damages that
21  MEYERS has sustained and will sustain as a direct and proximate result of HARTFORD's bad
22  faith, including without limitation insurance proceeds owing under the policy; the loss of use of
23  insurance proceeds owing under the policy; attorneys' fees, other fees, costs, and expenses
24  incurred in an effort to obtain proceeds under the policy; the loss and deprivation of insurance
25  proceeds under CLOER's policy; the loss of use of insurance proceeds under CLOER's policy;

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain the insurance proceeds under CLOER's policy; and other attorneys' fees, fees, costs, and expenses.

6.    For a judgment against HARTFORD declaring and ordering that HARTFORD has waived and is estopped from asserting any purported right to deny coverage, deny payment of benefits, assert any coverage defenses, and/or modify or supplement positions and defenses that HARTFORD had previously asserted.

7.    For a judgment against HARTFORD for all past, present, and future damages that MEYERS has sustained and will sustain as a direct and proximate result of HARTFORD's negligence, including without limitation the insurance proceeds owing under the policy; the loss of use of insurance proceeds owing under the policy; attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds under the policy; the loss and deprivation of insurance proceeds under CLOER's policy; the loss of use of insurance proceeds under CLOER's policy; attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain the insurance proceeds under CLOER's policy; and other attorneys' fees, fees, costs, and expenses.

8.    For a judgment against HARTFORD for all past, present, and future damages that MEYERS has sustained and will sustain as a direct and proximate result of HARTFORD's unreasonable denial of MEYERS' claim for coverage in violation of Washington State's Insurance Fair Conduct Act, including without limitation the insurance proceeds owing under the policy; the loss of use of insurance proceeds owing under the policy; attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds under the policy; attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain insurance proceeds under CLOER's policy; attorneys' fees, other fees, costs, and expenses incurred in this action; and other attorneys' fees, fees, costs, and expenses.

9.    For a judgment against HARTFORD for all past, present, and future damages that MEYERS has sustained and will sustain as a direct and proximate result of HARTFORD's

COMPLAINT - 39

CARSON | NOEL, PLLC
20 Sixth Ave. N.E. | Issaquah, WA 98027
P: 425.837.4717 | F: 425.837.5396

1  unreasonable denial of payment of benefits in violation of Washington State's Insurance Fair
2  Conduct Act, including without limitation the insurance proceeds owing under the policy; the
3  loss of use of insurance proceeds owing under the policy; attorneys' fees, other fees, costs, and
4  expenses incurred in an effort to obtain proceeds under the policy; attorneys' fees, other fees,
5  costs, and expenses incurred in an effort to obtain insurance proceeds under CLOER's policy;
6  attorneys' fees, other fees, costs, and expenses incurred in this action; and other attorneys' fees,
7  fees, costs, and expenses.

8       10.    For a judgment against HARTFORD for all past, present, and future damages
9  that MEYERS has sustained as a direct and proximate result of HARTFORD's violation of
10 Washington State's Consumer Protection Act, including without limitation the insurance
11 proceeds owing under the policy; the loss of use of insurance proceeds owing under the policy;
12 attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain proceeds under
13 the policy; attorneys' fees, other fees, costs, and expenses incurred in an effort to obtain
14 insurance proceeds under CLOER's policy; and other attorneys' fees, fees, costs, and expenses.

15      11.    For a judgment against HARTFORD under Washington State's Consumer
16 Protection Act enjoining HARTFORD from committing further violations of the Act.

17      12.    For a judgment against HARTFORD awarding MEYERS reasonable attorneys'
18 fees and actual and statutory litigation costs as provided under Washington State's Insurance
19 Fair Conduct Act, Washington State's Consumer Protection Act, Washington State case law
20 (e.g., *Olympic Steamship* and its progeny), and/or other applicable law.

21      13.    For a judgment against HARTFORD awarding MEYERS treble damages as
22 provided under Washington State's Insurance Fair Conduct Act, Washington State's Consumer
23 Protection Act, and/or other applicable law.

24      14.    For a judgment against HARTFORD awarding taxable fees and costs.

25      15.    For a judgment against HARTFORD awarding prejudgment and post-judgment
26 interest.

**COMPLAINT - 40**

1    16.    For a judgment against HARTFORD awarding any and all other damages or

2   relief authorized by law or in equity.

3    17.    For any other or further relief that the Court finds is fair, just, equitable, and

4   appropriate.

5    DATED THIS 4th day of _____August_____, 2012.

6                                                   CARSON & NOEL, PLLC

7

8                                                   By _____

9                                                   Robert A. Meyers, WSBA No. 24846
                                                    Wright A. Noel, WSBA No. 25264

10                                                  Attorneys for Plaintiff Meyers

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 41

FILED

12 AUG 20 PM 2:16

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-27153-4 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY AT SEATTLE

WILLIAM S. MEYERS, individually and on
behalf of the marital community comprising
WILLIAM S. MEYERS and BONNIE A.
MEYERS,

                    Plaintiff,

v.

PROPERTY & CASUALTY INSURANCE
COMPANY OF HARTFORD, a foreign
insurance company,

                    Defendant.

NO.   12-2-27153-4 SEA

INSURANCE COMMISSIONER'S
CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that the Insurance Commissioner of the State of Washington has accepted
service of

*SUMMONS; COMPLAINT; ORDER SETTING CIVIL CASE SCHEDULE*

in the above-mentioned matter on AUGUST 16, 2012, on behalf of and as statutory attorney for

*PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD*

an authorized foreign or alien insurer, and has forwarded a duplicate copy thereof to said insurance
company pursuant to RCW 48.02.200 and 48.05.200.

Receipt of the $10 statutory service fee is acknowledged.

**ISSUED AT OLYMPIA, WASHINGTON:** AUGUST 16, 2012

**Certification No.:** 91 7199 9991 7030 1778 0599

**MIKE KREIDLER**
Insurance Commissioner

By *[signature: Josh Pace]*

Josh Pace
Service of Process Coordinator

Original to:

ROBERT A. MEYERS
ATTORNEY AT LAW
20 SIXTH AVE NE
ISSAQUAH, WA 98027

Copy to:

PROPERTY & CASUALTY INS. CO. OF HARTFORD
CORPORATION SERVICE COMPANY
300 DESCHUTES WAY SW STE 304
TUMWATER, WA 98501

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| WILLIAM S. MEYERS, individually and on behalf of the marital community comprising WILLIAM S. MEYERS and BONNIE A. MEYERS, | No. 12-2-27153-4 SEA |
| Plaintiffs, | NOTICE OF APPEARANCE |
| vs. | |
| PROPERTY & CASUALTY INSURANCE COMPANY OF HARTFORD, a foreign insurance company, | |
| Defendant. | |

TO:        Clerk of the Court;

AND TO:      Plaintiff's attorneys of record.

**DEFENDANT** Property & Casualty Insurance Company of Hartford, without waiving jurisdiction or service of process, enters its appearance in the above-entitled action through Forsberg & Umlauf, P.S., its attorneys of record, and requests that all further pleadings herein, exclusive of process, be served upon said attorneys at its office address below.

NOTICE OF APPEARANCE – PAGE 1

686585 / 450.0055

DATED this 24 day of August, 2012.

FORSBERG & UMLAUF, P.S.

By _____
    John P. Hayes, WSBA #21009
    Matthew S. Adams, WSBA #18820
    Attorneys for Defendant

NOTICE OF APPEARANCE – PAGE 2

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

# CERTIFICATE OF SERVICE

The undersigned certifies under the penalty of perjury under the laws of the State of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served the foregoing NOTICE OF APPEARANCE on the following individuals in the manner indicated:

Robert A. Meyers
Wright A. Noel
Carson & Noel, PLLC
20 Sixth Ave. NE
Issaquah, WA  98027-3428
Facsimile:  (425) 526-5816
(  ) Via U.S. Mail
(  ) Via Facsimile
(X) Via Hand Delivery
(X) Via ECF

**SIGNED** this _24th_ day of August, 2012, at Seattle, Washington.

Amy Jean Sears, PLS

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

686585 / 450.0055